UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD J. KWITEK,

          Plaintiff,

          -vs-                       07-CV-826-JTC

UNITED STATES POSTAL SERVICE, et al.,

          Defendants.

_____


This action was brought against the United States Postal Service ("USPS") pursuant to the Federal Tort Claims Act ("FTCA"), which provides a limited waiver of sovereign immunity to allow claims for money damages based on the negligence of federal government employees. *See* 28 U.S.C. § 1346(b)(1). Plaintiff Edward Kwitek claims that he was injured while working as a driver for Midwest Transport, Inc., under a contract with the USPS, as he was loading containers of mail onto a Midwest trailer at the LaSalle Post Office Station in Niagara Falls, New York.

On the eve of trial, the government moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction on the ground that the FTCA's waiver of sovereign immunity does not apply in this case because plaintiff was injured while performing work as an independent contractor, and because the injury arose from the exercise of a discretionary function (*see* Item 29). The court heard oral argument of the motion on September 1, 2009 (*see* Item 43), and reserved decision pending further

submissions upon development of a more complete record at trial (*see* Tr. 2-3).[1] The two-

day bench trial on the issue of liability[2] commenced the next day, September 2, 2009.

The following constitutes the court's ruling on the government's motion to dismiss.

## BACKGROUND

The USPS and Midwest entered into a "Transportation Services Contract," known

as Highway Contract Route ("HCR") No. 14041, for provision of mail transportation services

between post office facilities in Buffalo, Grand Island, and Niagara Falls, New York, for the

period of July 1, 2003, through June 30, 2007 (Joint Trial Ex. 44). In Section B,

"Statement of Work and Specifications," the Contract establishes a schedule for Midwest

to make three runs daily between the designated USPS locations within specified time

frames (*see id.* at § B.1, pp. 3699-3701), and provides the following "Work Requirements:"

[Midwest] may be required to load and unload as outlined below:

---

[1] Numerical references preceded by "Tr." are to pages of the transcript of trial proceedings held on September 2, 2009 (Item 44) and September 3, 2009 (Item 45).

[2] As reflected by the court's docket, this case had originally been referred to mediation pursuant to the district court's Alternative Dispute Resolution Plan. The referral order established July 31, 2009, as the date on which the mediation was to be completed, and set a trial date of August 31, 2009, in the event settlement was not reached (*see* Item 12). The parties stipulated to the selection of a mediator, and the initial mediation session was scheduled for May 6, 2009 (Item 13). No Mediation Certification has been filed.

Instead, on June 25, 2009, the government's counsel wrote a letter to the court advising that an issue had arisen during discovery which the parties agreed was appropriate for resolution by summary judgment, possibly obviating the need for a trial (Item 14). The court adopted the government's proposal to adjourn the trial (*id.*), and set a briefing schedule for the summary judgment motion (Item 15). This resulted in an exchange of letters indicating a misunderstanding between the parties regarding plaintiff's consent to adjourn the trial pending resolution of the anticipated summary judgment motion (*see* Items 16, 17, 18).

Consequently, on July 16, 2009, the court conducted a telephone conference to resolve the scheduling dispute. As reflected in the minutes for that conference, the court rescinded its prior order, placed the matter back on the trial calendar, and bifurcated the trial to determine liability first, and if necessary, damages second (Items 19 & 20).

a.      [Setting forth approximate daily average loading and unloading times at the designated locations].

b.      Sufficient time for loading and unloading at intermediate office(s) is included in the en route schedule.

c.      At offices where postal personnel are on duty, [Midwest] will inquire prior to departure to determine if all mail has been tendered.

d.      [Midwest] will be required to drop trailers upon arrival at destinations as directed by a postal official. [Midwest] will also be required to pick up outbound loads at location(s) directed by a postal official prior to departure.

e.      In order to maintain schedule, postal personnel may assist with loading and unloading.

. . . .

g.      [Midwest] will be required to report in sufficient time to load and depart on schedule.

h.      [Midwest] will be required to load, transport, and unload all classes of mail at the headout, en route, and destinating offices.

. . . .

(*Id.* at § B.1.4, pp. 3701-02).

The background facts of plaintiff's personal injury claim, developed through his testimony at trial, are as follows.

Plaintiff began working for Midwest in July 2003.  He was assigned to the Buffalo-Grand Island-Niagara Falls route for approximately two years prior to October 19, 2005, the date on which his injury is alleged to have occurred.  He testified that his normal routine included three trips each day along the route, five days a week.  His shift began each day at 11:30 a.m. at the Midwest yard, where he would do a "pretrip" check of tire pressure, fluids, and other operational functions of the tractor before heading to the Buffalo Station

to pick up a trailer and begin his run to the postal stations in Grand Island and Niagara Falls, and then back to Buffalo (Tr. 7-13).

Plaintiff testified that he ordinarily arrived at the LaSalle Post Office Station in Niagara Falls around 1:20 p.m. He was allotted twenty minutes to disconnect his tractor and reconnect it to another trailer loaded with mail to be transported back to Buffalo. C.C. Cox, the Mail Handler in charge of the dock at the LaSalle Station, was "always there," and "usually everything was loaded." If Mr. Cox was off, someone else was there to load the truck. In the entire two years he worked for Midwest prior to October 19, 2005, he never had to load the trailer himself (Tr. 14-18).

Mr. Cox testified that he was employed by the USPS as a Mail Handler for 29 years, and worked at the LaSalle Station from April 2001 until he retired in October 2005. He testified that it was his job, not Mr. Kwitek's, to load the mail on to the truck. He described his duties as follows: "My duties was to load and unload the truck" (Tr. 68). If Mr. Cox was not at work, management would assign another employee to load and unload the mail. It would not be considered appropriate for the truck driver to load or unload the truck, or to use any mechanical devices on the loading dock (Tr. 71-74).

Plaintiff testified that on October 19, 2005, he arrived at the LaSalle Station on the first run at approximately 1:15 p.m. There were no USPS personnel present in the loading dock area when he arrived, and all the lights were off. He noticed that the trailer he was supposed to transport back to Buffalo was empty. He walked across the loading dock, past the entrance to the Business Mail Entry Unit, and through two sets of double doors into the main part of the Station where the supervisor's desk was located. Plaintiff testified that there were two people at the desk, and he was advised that he was "on his own" since no

-4-

one was available to help him load the trailer. They pointed to two large wire mail containers, called "cages," and told plaintiff that those two cages needed to be transported back to Buffalo (Tr. 24-28, 32, 51-57).

Plaintiff testified that he proceeded to push the first of the two cages across the dock to the trailer and found that it was heavy and difficult to move. The dock itself is level, but the trailer floor is on an uphill incline. About halfway into the trailer he felt a pain shooting down his left side from his stomach to his groin, but he continued to push the container all the way to the front of the trailer. He testified that because of the constraints of his schedule he did not stop to get help or call his supervisor, but instead continued to load the second container and proceed back to Buffalo (Tr. 28-30, 61-64). He completed two more full runs, and finished his shift at 7:50 p.m.(Joint Ex. 11, p. 56).

Plaintiff filed this action on December 14, 2007, seeking $2.5 million in damages to compensate for the injuries he sustained as the result of this incident, based on the government's negligence in failing to provide "appropriate and expected personnel and equipment to allow the plaintiff to safely accomplish his required tasks" (Item 1, ¶ 10). The government maintains that the court lacks subject matter jurisdiction over the action because the FTCA's limited waiver of sovereign immunity is inapplicable under the circumstances.

## DISCUSSION

**I.      Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1) challenges the district court's authority to adjudicate a case, and the burden of

establishing that the court in fact retains jurisdiction rests with the party asserting it.  *Loew v. U.S. Postal Service*, 2007 WL 2782768, at *4 (E.D.N.Y. February 9, 2007); *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 136 (E.D.N.Y. 2004) ("On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the burden of establishing jurisdiction, by a preponderance of the evidence, rests with the party asserting that it exists.").  The objection that the federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial.  *See  Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

As noted by the Second Circuit, if the objection is appropriately raised, the party asserting subject matter jurisdiction must come forward with competent proof to support its allegations of jurisdictional facts.  *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  Thus, when ruling on a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990); *see also Lanham v. Sandberg Trucking, Inc.*, 2009 WL 1067243, at *1 (E.D.Mo. April 20, 2009).  "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn*, 918 F.2d at 729.

In this case, the government asserts that the court lacks jurisdiction to adjudicate plaintiff's claims based on two recognized exceptions to the FTCA's limited waiver of

sovereign immunity: (1) the "independent contractor" exception, and (2) the "discretionary function" exception. Each of these grounds is now discussed in turn.

## II.   Federal Tort Claims Act

### A.   The Independent Contractor Exception

It is well established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Congress can waive the government's sovereign immunity, but only through clear and unequivocal statutory language, and waivers of sovereign immunity and their conditions must be strictly construed in the government's favor. *See Fisko v. United States General Serv. Admin.,* 395 F. Supp. 2d 57, 61-62 (S.D.N.Y. 2005). If the government has not clearly and unequivocally waived its sovereign immunity, or if the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist over a plaintiff's claims. *Id*. at 62.

The FTCA provides a limited waiver of sovereign immunity with respect to claims against the United States that seek money damages for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). This waiver applies to "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. A "federal agency" includes "executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as

instrumentalities or agencies of the United States, but does not include any contractor with

the United States." *Id.*; *see Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990). "Thus,

as a general rule, sovereign immunity precludes suits against the United States for injuries

caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d

Cir. 1997); *see also Barna v. United States*, 2008 WL 2704347, at *1 (W.D.N.Y. July 2,

2008) (". . . independent contractors are not considered federal employees within the

meaning of the FTCA."); *Fisko*, 395 F. Supp. 2d at 62 ("If the injuries alleged in a complaint

were caused by an independent contractor, the FTCA does not waive sovereign immunity

for that claim, and it must be dismissed for lack of subject matter jurisdiction.").

In cases where the nature of the relationship between the government and a

contracting outside vendor is unclear or a matter of dispute, the courts focus on the terms

of the contract to determine (1) whether the government controls the detailed physical

performance of the contractor, and (2) whether the government supervises the day-to-day

operations of the contractor. *See, e.g., Moreno v. United States*, 965 F. Supp. 521, 524

(S.D.N.Y. 1997); *see also Roditis*, 122 F.3d at 111. In *Moreno*, for example, the plaintiff

claimed that he was injured when he tripped over a loose bathroom floor drain cover in an

apartment building that had been seized by the U.S. Marshals Service ("USMS") and was

being managed by an outside building maintenance company. The court closely examined

the management contract, finding that the USMS expressly delegated both detailed

physical control and daily supervision of the building to the outside vendor, retaining only

broad supervisory authority "insufficient to confer liability pursuant to the FTCA." *Moreno*,

965 F. Supp. at 525 (citing cases). Accordingly, the court found that the building

maintenance company was an independent contractor, rather than a government employee, and granted the government's motion to dismiss for lack of subject matter jurisdiction over plaintiff's tort claim based on the unsafe condition of the building. *Id.*

In this case, however, plaintiff does not forcefully dispute his employer's status as an independent contractor, a status confirmed by the court's review of pertinent provisions of the 3700-plus page contract. Rather, he contends that the independent contractor exception has no application to his claim because the injury occurred as the result of negligence on the part of the USPS in failing to provide appropriate assistance and equipment to perform the work, not as the result of any negligence on the part of the independent contractor, Midwest. Plaintiff contends that, notwithstanding the contractual language relied on by the government, the jurisdictional facts alleged in the complaint and supported by competent proof at trial establish that the duty and responsibility to load and unload mail was not delegated to Midwest drivers but was in fact retained and exercised by USPS employees.

To support its argument for application of the independent contractor exception, the government cites *Flanagan v. United States*, 430 F. Supp. 2d 106 (W.D.N.Y. 2006) (Arcara, C.J., adopting Report and Recommendation of Foschio, M.J.), in which the plaintiff was injured when he fell while performing maintenance work on a boiler in the Dulski Federal Building in downtown Buffalo. The plaintiff was an employee of a private maintenance contractor hired by the General Services Administration, a federal agency. He alleged that the government was negligent in failing to provide a safe work place, and in failing to remedy the dangerous condition of the boiler. The court dismissed the complaint for lack of subject matter jurisdiction, finding that the plaintiff's employer "was an

independent contractor and, as such, Plaintiff cannot establish that any employee of the [government] was negligent in relation to Plaintiff's injuries." *Flanagan*, 430 F. Supp. 2d at 113 (citing *Hall v. United States*, 825 F. Supp. 427, 430 (D.N.H. 1993) ("[F]or GSA to be held liable in tort for plaintiffs' injuries, the court must find that an employee of the federal government was negligent in relation to the maintenance and/or supervision of the elevator in question."). The court specifically rejected the argument that, because the plaintiff alleged negligent supervision on the part of the federal agency, and not negligence on the part of the contractor hired to perform the work, the independent contractor exception did not apply. The court found that:

> [A] plain reading of the Contract demonstrates that any negligence which resulted in Plaintiff's fall and subsequent injuries could not have been the responsibility of GSA and thus [United States], as GSA had delegated the responsibilities of maintenance work on the boiler, day-to-day supervision and management, and responsibility for worker safety to the contractor, and retained no power to control the detailed physical performance of the contractor.

*Id.* at 113.

Similarly, in *Cerrone v. United States*, 2006 WL 2795614 (W.D.N.Y. September 26, 2006) (Skretny, J), the plaintiff was injured while working as a laborer for a local construction company under contract with the Army Corps of Engineers to build a maintenance facility at the United States Air Base in Niagara Falls. He brought suit under the FTCA, claiming that the government negligently failed to provide a safe place to work. The court found that the contract governing the performance of the work delegated supervisory responsibility for worksite safety and accident prevention to the contractor, *id.*, 2006 WL 2795614, at *3-4, and that "as a factual matter, [the contractor] supervised the

day-to-day operations of the worksite." *Id.* at *5. The court also found that the government's retention of general oversight authority over the project did not amount to the level of control of the contractor's performance or day-to-day supervision necessary to overcome the independent contractor exception. *Id.* at *4.

Cases which have considered the nature of the contractual relationship between the USPS and outside mail carriers have reached the same conclusion. *See, e.g., Lerma v. United States*, 716 F. Supp. 1294, 1296-97 (N.D.Cal. 1988) (tractor/trailer operator involved in collision while transporting mail under contract with USPS held to be independent contractor and not employee); *see also Norton v. Murphy*, 661 F.2d 882, 883-84 (10th Cir. 1981) (citing cases holding that a person delivering U.S. mail pursuant to "Star Route" contract with old Post Office Department was not an employee of United States as defined in FTCA); *Thomas v. United States*, 204 F. Supp. 896, 898-99 (D.T. 1962) (nothing contained in contract or other facts regarding driver's status as Star Route carrier indicated control by government over details of actual performance of worker's duties). In each of these cases, however, the court was called upon to examine the nature of the contractual relationship in order to determine whether the contractor could be held liable as a government employee under the FTCA for negligent conduct causing injury to a third-party.

In this case, the injured party is an employee of the independent contractor seeking to impose FTCA liability upon the government based on the negligence of USPS employees in failing to perform their regular duties, as established by the testimony at trial regarding the ordinary course of conducting daily operations at the post office loading dock.

Accordingly, the nature of the relationship between the contractor and the government is not a matter of serious dispute, and the court need not engage in an examination of the contractual language to determine the degree of control retained by the USPS over the detailed performance of Midwest's work or supervision of its day-to-day operations.

In support of his position, plaintiff cites *Knots v. United States*, 893 F.2d 758 (5th Cir. 1990), in which an employee of an independent electrical contractor was injured while conducting tests on transformers at an Air Force base to check for possible PCB contamination. The circuit court in *Knots* affirmed the district court's denial of the government's motion to dismiss on the ground that the contractor was a "statutory employee" liable only under the state's workmen's compensation laws, and also affirmed the district court's findings on liability and apportionment of fault between the parties.

Somewhat closer to the mark, in *Prior v. U.S. Postal Service*, 985 F.2d 440 (8th Cir. 1993), the plaintiff was a driver for an independent trucker who contracted with the USPS to haul mail between destinations in Iowa. Under the contract, the trucker "was to receive the mail at the edge of the post office loading dock, load the mail onto his truck, haul the mail to the destination post office, and unload the mail onto the post office loading dock." *Id.* at 441. The plaintiff was injured when the upper compartment door of a large mail container fell open and struck him on the shoulder as he was unloading the container from his truck. He sued under the FTCA alleging negligence on the part of USPS employees for failing to properly secure the container door. The circuit court affirmed the district court's judgment, entered after a two-day bench trial, finding negligence on the part of postal employees and attributing 75% of the causative fault to plaintiff. *Id.* at 441-43.

Although these cases do not address the precise issue before this court, they do provide some limited authority for the exercise of subject matter jurisdiction over an FTCA action brought against the government by an employee of an independent contractor who was injured while performing the contractual work. Based on this authority, and considering the testimony and evidence elicited at trial in support of plaintiff's jurisdictional allegations, the court therefore concludes that the independent contractor exception to the FTCA's waiver of sovereign immunity does not apply under the circumstances presented in this case.

## II. The Discretionary Function Exception

The government also relies on the FTCA's statutory "discretionary function" exception, which expressly precludes "claims] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Gibbered*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varia Airlines*, 467 U.S. 797, 814 (1984)). As the Supreme Court has observed, this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varia Airlines*, 467 U.S. at 808, *quoted in Berkovitz v. United States*, 486 U.S. 531, 536 (1988). This court's task is to determine whether the conduct

alleged to have caused the harm in this case is the type of governmental activity Congress sought to protect from tort liability by the discretionary function exception.

From the *Varia*, *Berkovitz*, and *Gibbered* decisions emerged a two-prong test for determining whether the discretionary function exception applies in a given case. Under this test (commonly referred to as the *Berkovitz-Gibbered* test), the exception bars suit only if two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *Gibbered*, 499 U.S. at 322-23; *Berkovitz*, 486 U.S. at 536-37). The courts have charged the government with the burden of proving that both conditions have been satisfied. *See, e.g., King v. United States*, 491 F. Supp. 2d 286, 296 (D.Conn. 2007).

Applying the first prong, the court first must identify the conduct that is alleged to have caused the harm, then determine whether that conduct can fairly be described as discretionary. *See Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009). As set forth in the complaint, the negligent conduct alleged to have caused plaintiff's injury in this case is the government's "fail[ure] to provide the plaintiff with appropriate and expected personnel and equipment to allow the plaintiff to safely accomplish his required tasks." (Item 1, ¶ 10). According to plaintiff, it is the specific conduct of the postal employees at the LaSalle Station on October 19, 2005 which forms the nexus of his claims, not some discretionary judgement or policy-driven choice warranting sovereign immunity protection.

The government, on the other hand, has traced the conduct challenged by the suit to the decision by the USPS to contractually delegate the responsibility for loading, unloading and transporting of the mail to Midwest, along with the decision to procure the rigid wire container which plaintiff was pushing when he sustained the injury. According to the government, these decisions are clearly discretionary functions based upon policy considerations of efficiency and cost, and are not compelled by any law or regulation. The government reasons that, since plaintiff was injured while performing the very task delegated to Midwest as a matter of sound judgment grounded in considerations of public policy, his tort claim is subject to the discretionary function exception and is barred by sovereign immunity.

The Second Circuit's *Coulthurst* decision sheds some light on the court's task at step one of the *Berkovitz-Gibbered* test. The plaintiff in *Coulthurst* was a federal prisoner who brought an FTCA action against the United States seeking to recover damages for injuries sustained while lifting weights in the prison weight room. He claimed that the prison was negligent in its inspection and maintenance of the weight lifting equipment. The district court read the complaint to encompass the prison officials' decisions about weight room maintenance procedures, "involving elements of judgment or choice and a balancing of policy considerations," and concluded that the government had met both prongs of the *Berkovitz-Gibbered* test. *Coulthurst*, 214 F.3d at 109.

On appeal, the Second Circuit court found the operative words of plaintiff's "negligent maintenance" claim to be "susceptible to various readings." *Id.* In the circuit court's view, the complaint was broad enough to cover not only the type of negligence found by the district court to be covered by the discretionary function exception, *i.e.*,

negligence in the decision-making process regarding appropriate inspection and maintenance procedures, but also "a very different type of negligence" involving arguably discretionary conduct unrelated to any plausible policy objectives, such as "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable," which would fall outside the coverage of the exception. *Id.* at 109, 111.

> Such actions do not reflect the kind of considered judgment "grounded in social, economic, and political policy" which the [discretionary function exception] is intended to shield from "judicial 'second-guessing.'" If the plaintiff can establish that negligence of this sort occurred, his claims are not barred by the [discretionary function exception], and he is entitled to recover under the FTCA.

*Id.* at 111 (quoting *Varia Airlines*, 467 U.S. at 814).

Similarly, in this case plaintiff's negligence claims are broad enough to encompass not only the government's decisions regarding contractual delegation of the responsibility for loading and unloading the mail, or procurement of appropriate containers, but also the conduct of government employees unrelated to any plausible policy objectives, such as failure to provide assistance at the loading dock in accordance with established practice and protocol. This assessment is supported by the trial testimony indicating a reasonable expectation on behalf of both plaintiff and LaSalle Station employees that someone other than plaintiff would be available on the day in question to load the mail on to the Midwest truck. Based on this view, the court cannot conclude that the conduct alleged to have caused the harm in this case necessarily involves "an element of judgment . . . of the kind

that the discretionary function exception was designed to shield." *Varia Airlines*, 467 U.S. at 813.

Accordingly, the government cannot establish that the discretionary function exception applies in this case.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

Before turning to the task of finding facts and stating conclusions of law after trial on the issue of liability, and reminding the parties of the prospect of a separate trial on damages as well as the continuing obligation to pursue alternative methods of resolving the dispute, the court finds it appropriate to refer this matter to Hon. Jeremiah J. McCarthy, United States Magistrate Judge, for the purpose of conducting a settlement conference.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   2/11                              , 2010
p:\pending\2007\07-826.jan20.10